UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| ANWAR K. MALIK,<br>On Behalf Of Himself And All Others Similarly Situated,<br><br>         Plaintiff<br><br>V.<br><br>F-19 HOLDINGS, LLC,<br>FITNESS 19 KY 185, LLC,<br>CALLFIRE, INC.<br><br>         Defendants | Civil Action No. _____<br><br><br><br>**CLASS ACTION**<br>**COMPLAINT**_____ |

Plaintiff Anwar K. Malik ("Plaintiff" or "Malik"), on behalf of himself and others similarly situated, for his Complaint against Defendants F-19 Holdings, LLC ("F-19") and Fitness 19 KY 185, LLC ("KY 185"), (collectively the "Fitness 19 Defendants"), and CallFire, Inc. ("CallFire") (collectively "Defendants") hereby respectfully states as follows:

## INTRODUCTION

1. This is a Class Action Complaint brought to obtain monetary and equitable relief on behalf of a class of individuals who received unsolicited, non-emergency text messages to their cellular telephones from Defendants.

2. The Telephone Consumer Protection Act ("TCPA") and Federal Communications Commission ("FCC") rules ban most commercial text messages sent to cellular telephones using an "automatic telephone dialing system." Such texts are banned unless (1) the recipient gave prior express written consent to receive the messages or (2) the

messages are sent for emergency purposes. The ban applies even if the consumer has not placed his or her mobile phone number on the National Do Not Call Registry.

3. The public policy behind the TCPA is to address telemarketing abuses attributable to the receipt of unsolicited communications. "Congress clearly identified the animating purpose of the TCPA: to prevent advertisers from unfairly shifting the cost of their advertisements to consumers … ." Standard Mut. Ins. Co. v. Lay, 989 N.E.2d 591, 599 (Ill. 2013).

4. Spam text messages sent to cellular telephones are an expensive and annoying problem for consumers and network operators in the United States. The increasingly sophisticated nature of cellular telephones allows spammers to engage in sophisticated attacks through a phone's voice and data channels using text messages to entice recipients of the messages to purchase goods or services.

5. Defendants have a practice of sending unsolicited, non-emergency text messages to individuals' cellular telephones using an automatic telephone dialing system. In an effort to increase their sales, Defendants, acting in concert, sent such text messages using computer software designed to "blast" text messages to thousands of telephone numbers simultaneously. These text messages promoted the Fitness 19 Defendants' goods and services.

6. The Fitness 19 Defendants sent such texts to thousands of individuals in Kentucky over the course of several years.

7. Upon information and belief, F-19 utilized this scheme nationwide, sending such texts to thousands of individuals throughout the country over the course of several years.

8. By sending unauthorized, non-emergency text messages, Defendants have caused consumers actual harm because consumers are subjected to intrusion and aggravation that accompanies the receipt of spam messages and may have to pay their cellular telephone service providers for text messaging plans or for each text message.[1]

9. In order to redress these injuries, Plaintiff, on behalf of himself and a nationwide class of similarly situated individuals, brings suit under the TCPA, 47 U.S.C. § 227, which prohibits unsolicited, non-emergency voice and text calls to cellular phones using an automatic telephone dialing system.

10. Plaintiff, individually, and on behalf of the proposed class seeks an injunction requiring Defendants to cease all text message advertising activities in violation of the TCPA, an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

**PARTIES, JURISDICTION, AND VENUE**

11. Plaintiff Anwar K. Malik ("Malik") is, and at all times mentioned herein was, an individual citizen of the Commonwealth of Kentucky, residing in Fayette County, within the Eastern District of Kentucky. Malik is a Fitness 19 member, having signed a Membership Agreement in 2008.

12. Defendant F-19 Holdings, LLC ("F-19"), is a Delaware limited liability company with a principal place of business at 32605 Temecula Parkway Ste. 308, Temecula, California, 92592.  F-19 does business throughout the United States.  Specifically, F-19 owns and operates hundreds of fitness centers throughout the country doing business as "Fitness 19".

---

[1] The recipient of a text has a cause of action under the TCPA regardless of whether the recipient had to pay a higher phone bill as a result of the text message.  See, e.g., Stern v. DoCircle, Inc., 2014 WL 486262, at *15 (C.D. Cal. Jan. 29, 2014).

13. Defendant Fitness 19 KY 185, LLC ("KY 185") is a Kentucky limited liability company that operates a Fitness 19 location at 3650 Boston Road, Lexington, Kentucky 40514.

14. Defendant CallFire, Inc. ("CallFire") is a Delaware corporation with its principal place of business at 1335 4th Street, 2nd Floor, Santa Monica, California 90401. CallFire does business throughout the United States, including in the Commonwealth of Kentucky.

15. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy exceeds $5,000,000 as each member of the proposed Class of thousands is entitled to up to $1,500 in statutory damages for each text message made in violation of the TCPA. Further, Plaintiff alleges a national Class which results in at least one Class member belonging to a state different than Defendants. Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

16. This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves violations of a federal statute, the TCPA. See Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740 (2012).

17. Venue is proper in the Eastern District of Kentucky pursuant to 28 U.S.C. § 1391 because Defendants are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced, because Defendants' contacts with this District are sufficient to subject them to personal jurisdiction, and because a substantial part of the events, including the text messages received by Plaintiff, occurred in this District.

**FACTUAL ALLEGATIONS**

18. Text message advertising is a growing trend in electronic marketing that allows marketers to instantly reach potential customers on their cellular telephones.

19. A text message, also called an "SMS message," which is an acronym for short message service, is a message directed to a wireless device through the use of the telephone number assigned to the device and is no longer than 160 characters. When a text message is sent, the recipient's cellular telephone alerts him or her that the message has been received.

20. On its website, www.callfire.com, Defendant CallFire describes itself as a technology company that "provides user-friendly, intuitive voice and text connectivity products to over 100,000 businesses. The company is dedicated to providing high-availability systems, intuitive user interfaces, furious developer support, and unparalleled customer care."

21. With respect to text messaging, CallFire's website describes its services as follows: "[T]ext marketing lets you reach thousands instantly. SMS marketing services are used across industries from insurance to finance to real estate to fitness. It is so common nowadays that every business, no matter the industry, can send bulk SMS to their customers."

22. In <u>United States of America v. Skyy Consulting, Inc. also d/b/a CallFire, a California corporation</u>, Case. No. CV:13-2136 (N.D. Cal. 2013), the Federal Trade Commission ("FTC") sued CallFire for illegal telemarketing activities. In its "Complaint for Civil Penalties, Permanent Injunction, and Other Relief" (the "FTC Complaint"), the FTC described CallFire's business model as follows, "CallFire markets voice broadcasting

5

services that use, or allow its clients to use, computers and automated dialers to deliver prerecorded messages through telephone calls. The voice broadcasting services sold by CallFire use automated dialers to place calls to a database of numbers. When the calls are answered, the voice broadcasting equipment uses a computerized protocol to detect whether the call has been answered by a live person, or by an answering machine or voice mail system, and to determine when the prerecorded message should be played. CallFire's clients authorize CallFire to distribute or broadcast prerecorded messages on the client's behalf. To deliver messages for its broadcasting clients, CallFire purchases the rights to use the software, computers, telecommunications services, or automated dialers needed to make telephone calls and deliver prerecorded messages from multiple providers. CallFire has the ability to simultaneously make thousands of telephone calls that deliver prerecorded messages. CallFire offers and provides clients with training on how to select the telephone numbers, prerecorded messages, and period during which CallFire's services will broadcast the client's message." FTC Complaint, ¶¶ 21 – 25 (Dkt. No. 1).

23. In its Complaint, the FTC alleges that CallFire engaged in "Assisting and Facilitating Abusive Telemarketing Acts or Practices" and that, "In numerous instances, [CallFire] has provided substantial assistance or support to sellers or telemarketers whom [CallFire] knew or consciously avoided knowing were engaged in violations of the [Telemarketing Sales Rule]." Id. ¶ 37. On May 17, 2013, a "Stipulated Order for Permanent Injunction and Civil Penalty Judgment" was entered against CallFire ("FTC Judgment") (Dkt. No. 9). Pursuant to the FTC Judgment, CallFire is prohibited from doing the following, among other things: A. Initiating any outbound telephone call that delivers a prerecorded

message to induce the purchase of any good or service unless, prior to making any such call, the seller has obtained from the recipient of the call an express agreement, in writing, that: 1. the seller obtained only after a clear and conspicuous disclosure that the purpose of the agreement is to authorize the seller to place prerecorded calls to such person; 2. the seller obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service; 3. evidences the willingness of the recipient of the call to receive calls that deliver prerecorded messages by or on behalf of a specific seller; and 4. includes such person's telephone number and signature. . . . In addition to various other injunctive provisions, CallFire was also ordered to pay a $75,000 civil penalty to the United States. In a separate concurring statement, Commissioner Maureen K. Ohlhausen said that "CallFire encouraged clients to use its robocalling service to market and generate large numbers of leads for mortgage modification services and other telemarketers and was deliberately indifferent to whether these clients had the call recipients' written permission."

24. Upon information and belief, the Fitness 19 Defendants hired or otherwise contracted with CallFire to assist them with their text marketing campaigns. A "Case Study" on CallFire's website titled "SMS Texting Beefs Up Fitness 19's Bottom Line" indicates that "[Fitness 19] came to CallFire" to "strengthen... its marketing strategy," which includes "[c]reating campaigns and blasting messages to thousands of members." CallFire provided the Fitness 19 Defendants with the ability to directly or indirectly send tens of thousands of text messages.

25. The Fitness 19 Defendants directly and personally participated in, directed and/or authorized the conduct constituting the statutory violations alleged herein.

26. The Fitness 19 Defendants have directed the mass transmission of text messages to cellular telephones of individuals who they hoped would purchase their goods or services.

27. Plaintiff Malik received the following ten text messages on his cellular telephone, (859) 312-2469, from Defendants on February 26, 2013; March 8, 2013; July 9, 2013; July 17, 2013; August 20, 2013; August 23, 2014; August 28, 2014; March 23, 2015; March 29, 2015; and April 3, 2015:





9

28. None of the text messages received by Plaintiff Malik include instructions on how to "opt-out" of receiving future text marketing from Defendants.

1. The "from" field of the transmissions to Plaintiff Malik was cryptically identified as "467-67," which is an abbreviated telephone number known as a "short code" that is used to send and receive text messages. On SMSWatchDog.com, a user-generated discussion board for unsolicited text messages, several consumers complain of receiving text messages from CallFire's "467-67" short code. According to CallFire's website, "[s]hort codes enable your application to send SMS at 30 messages per second" and, thus, "are perfect for applications that need to send SMS messages to lots of users".

2. The Fitness 19 Defendants sent or transmitted, or had sent or transmitted on their behalf, the same or substantially the same text messages en masse to a list of thousands of cellular telephone numbers using a computerized automatic telephone dialing system as defined by the TCPA that stores telephone numbers or receives telephone numbers from a database, or dials random or sequential numbers.

3. Plaintiff Malik, while a current member of KY 185, did not provide prior express written consent to receive text message marketing from the Fitness 19 Defendants or CallFire.

**CLASS ACTION ALLEGATIONS**

4. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class (the "Class") defined as follows:

5. All persons in the United States and its territories who during the four year period prior to the filing of the complaint in this action through the date of certification received one or more non-emergency text messages from or on behalf of the Defendants to their cellular telephones through the use of an automatic telephone dialing system without prior

express written consent. Plaintiff reserves the right to redefine the Class prior to class certification.

6. Numerosity: Members of the proposed Class are so numerous that their individual joinder is impracticable. The precise number of members is unknown to Plaintiff at this time. However, upon information and belief, it is at least several thousand individuals. The true number of proposed members is, however, known by the Defendants, and thus, Class members may be notified of the pendency of this action by first class mail, electronic, and published notice using information in Defendants' membership and marketing records.

7. Commonality: There are numerous questions of law and fact common to Plaintiff and the proposed Class; those questions predominate over any questions that may affect individual Class members, and include the following: a.) whether Defendants violated the TCPA by sending unauthorized, non-emergency text messages to Plaintiff and members of the proposed Class; b.) whether the equipment Defendants used to send the text messages in question was an automatic telephone dialing system as defined by the TCPA; c.) whether Plaintiff and members of the proposed Class are entitled to statutory damages under the TCPA; d.) whether Plaintiff and members of the proposed Class are entitled to treble damages based on the willfulness of the Defendants' conduct; and e.) whether Plaintiff and members of the proposed Class are entitled to injunctive or other equitable relief.

8. Typicality: Plaintiff's claims are typical of the other members of the proposed Class because he received unauthorized, non-emergency text messages sent in bulk by Defendants using an automatic telephone dialing system.

9. Adequacy: The named Plaintiff will adequately represent the interests of the proposed Class. Defendants have treated Plaintiff in the same manner as other proposed Class members and he has been damaged by this treatment in the same manner as other proposed Class members. Plaintiff is committed to vigorously prosecuting this action. Plaintiff has retained counsel well qualified to handle lawsuits of this type. Plaintiff has no interests that are adverse to those of the proposed Class.

10. Declaratory and Injunctive Relief: Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other proposed Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

11. Predominance: This case should be certified as a class action because the common questions of law and fact concerning the Defendants' liability for sending unauthorized, non-emergency text messages will predominate the litigation over any questions that may affect individual Class members.

12. Superiority: A class action is the only realistic method available for the fair and efficient adjudication of the claims of the proposed Class. The expense and burden of individual litigation makes it impracticable for members of the proposed Class to seek redress individually for the wrongful conduct alleged in this Complaint. Were each individual member required to bring a separate lawsuit, the resulting multiplicity of proceedings would cause undue hardship and expense for the litigants and the Court, and create the risk of inconsistent rulings, which would be contrary to the interest of justice and equity. Litigating these claims in a single action will streamline discovery and avoid needless repetition of evidence at trial.

COUNT I
VIOLATION OF THE TCPA 47 U.S.C. § 227, ET SEQ.
(Brought by the named Plaintiff individually and on behalf of the Class)

13. Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

14. The TCPA states, in part: It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States ... to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service… . 47 U.S.C. § 227(b)(1).

15. The TCPA defines "telemarketing call," or "telephone solicitation," as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of … goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4).

16. The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. §227(a)(1). The FCC has clarified that an automatic telephone dialing system includes predictive dialers and any other equipment that has "the *capacity* to dial numbers without human intervention." Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1043 (9th Cir. 2012) (quoting In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 FCC Rcd. 14014, 14092, ¶ 132 (2003) ("2003 TCPA Order") (emphasis in original)).

17. Under current FCC rules, before sending a non-emergency, telemarketing text message using an automatic telephone dialing system, the party sending the text message must obtain "prior express written consent" from the called party. "Prior express written consent" must: • Be in the form of a writing bearing the written or electronic signature of the person providing consent; • Specify the telephone number to which the person is consenting to be called; • Clearly authorize the company to call the person using an autodialer system or prerecorded message for telemarketing purposes; and • Ensure that consent is not a condition of purchasing goods or services. 27 C.F.R. § 64.1200(f)(8).

18. Defendants are "persons" as defined by 47 U.S.C. § 153(39).

19. Defendants made telephone calls, including, but not limited to, the text messages from short code "467-67" depicted above, to the cellular telephone numbers of Plaintiff and members of the proposed Class. See 2003 TCPA Order, 18 FCC Rcd. at 14115, ¶ 165; Satterfield v. Simon & Schuster, Inc., 569 F.3d 946 (9th Cir. 2009) (noting that text messaging is a form of communication used primarily between telephones and is therefore consistent with the definition of a "call").

20. Defendants did not make telephone calls to the cellular telephone numbers of Plaintiff and the proposed Class members "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

21. The telemarketing text calls were made without the prior express written consent (i.e., consent that is clearly and unmistakably stated) of Plaintiff and the proposed Class members, within the meaning of 47 U.S.C. § 227(b)(1)(A) and 27 C.F.R. § 64.1200(f)(8).

22. The text messages sent to Plaintiff and the proposed Class members were sent using equipment that had the capacity to store telephone numbers retrieved from the Fitness 19

Defendants' member database and to dial such numbers. Upon information and belief, the equipment may also be programmed to generate and dial random or sequential numbers. Upon information and belief, the equipment had the capacity to dial numbers without human intervention. By using such equipment, Defendants were able to effectively send text messages simultaneously to thousands of cellular telephone numbers en masse without human intervention.

23. The Defendants' conduct in sending said text messages violates 47 U.S.C. § 227(b)(1)(A)(iii).

24. Upon information and belief, the violations of 47 U.S.C. § 227(b)(1)(A)(iii) alleged herein were done willfully and knowingly on the part of Defendants.

25. As a result of Defendants' violations, Plaintiff and the proposed Class members suffered actual damages by, among other things, having to pay their respective cellular carriers for text messaging plans or for each text message, and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, among other things, a minimum of $500 in damages for each violation of the TCPA, and up to $1,500 if Defendants' violations of the TCPA are determined to be willful.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, respectfully requests that the Court enter judgment in his favor as follows:

A. Certifying the proposed Class under Fed. R. Civ. P. 23 and appointing Plaintiff and his counsel to represent the Class pursuant to Fed. R. Civ. P. 23(g);

B. Awarding actual and statutory damages to Plaintiff and the proposed Class;

C. Awarding Plaintiff and the proposed Class pre-judgment and post-judgment interest;

D. Awarding Plaintiff and the proposed Class appropriate equitable relief requiring Defendants to cease all text message advertising activities in violation of the TCPA;

E. Awarding payment of any penalties or other amounts under any applicable laws, statutes or regulations;

F. Entering judgment in favor of each Class member for damages suffered as a result of the conduct alleged herein;

G. Awarding Plaintiff's reasonable attorneys' fees and costs as provided by the TCPA; and

H. Granting such other and further legal and equitable relief as this Court deems just and necessary.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts where jury is available.

Respectfully submitted,

  /s/ Jonathan K. Kurtz
Jonathan K. Kurtz
Kelly P. Spencer
Spencer Law Group
535 Wellington Way, Suite 330
Lexington, KY 40503
Phone: (859) 252-4357
Fax: (859) 271-0021
Email: kelly.spencer.law@gmail.com

Jessica K. Winters
421 W. Second St.
Lexington, KY 40507
Phone: (859) 619-2134
Email: jessicawinters.law@gmail.com

*Counsel for Plaintiff*