## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION
## AT LEXINGTON

| | |
|---|---|
| **ANWAR K. MALIK, on behalf of himself and all others similarly situated,** | **CIVIL ACTION NO. 5:15-130-KKC** |
|     **Plaintiff,** | |
| **V.** | **OPINION AND ORDER** |
| **F-19 HOLDINGS, LLC,** **FITNESS 19 KY 185, LLC, and** **CALLFIRE, INC.,** | |
|     **Defendants.** | |

*** *** ***

This matter is before the Court on several motions by the parties, one of which is a motion by the defendants F-19 Holdings, LLC and Fitness 19 KY 185, LLC to compel the plaintiff to submit this dispute to arbitration and to dismiss the claims against them. (DE 11, Motion.)

Because the plaintiff's claims against these defendants cannot be resolved without referring to their membership agreement to determine whether the plaintiff expressly consented to the defendants' conduct, the motion to compel will be granted.

### I.  Background

With his complaint, the plaintiff, Anwar K. Malik, asserts that the defendants sent unsolicited, non-emergency text messages to his cell phone using an automatic telephone dialing system in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. He files this action as a class action on behalf of himself and other similarly situated individuals across the United States.

Two of the defendants – F-19 Holdings, LLC and Fitness 19 KY 185, LLC – operate

fitness centers. Malik alleges that F-19 Holdings, LLC "owns and operates hundreds of fitness centers throughout the country doing business as 'Fitness 19.'" (DE 30, Complaint ¶12.) Malik alleges that Fitness 19 KY 185, LLC operates a Fitness 19 location in Lexington, Kentucky. (DE 30, Complaint ¶13.)

Malik alleges that the Fitness 19 defendants embarked on a marketing campaign that involved sending unsolicited text messages to individuals urging them to purchase Fitness 19 goods and services. He alleges that they hired the third defendant in this action – CallFire, Inc. – to assist them. Malik alleges that CallFire provided the Fitness 19 defendants with software enabling them to "'blast text messages to thousands of telephone numbers simultaneously." (DE 30, Complaint ¶5.) Malik alleges that the defendants did this without first obtaining the recipients' express consent in violation of the TCPA, 47 U.S.C. § 227(b)(1).

## II. Analysis

In the first of their motions, the Fitness 19 defendants argue that Malik agreed to arbitrate this matter and, thus, under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, the Court must compel Malik to arbitrate the claims against them.

CallFire, for its part, moved to dismiss the TCPA claim against it under Federal Rule of Civil Procedure 12(b)(6), arguing that Malik had failed to state a claim against it. After CallFire filed its motion, Malik filed a notice of dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) in which he purported to give notice that the claims against CallFire were voluntarily dismissed without prejudice. (DE 40, Notice.) That rule provides that a plaintiff can voluntarily dismiss an action without a court order by filing a notice of dismissal before the opposing party serves an answer or motion for summary judgment. Fed. R. Civ. P. 41 (a)(1)(A)(i). At the time that Malik filed his notice, CallFire had neither

answered nor filed a motion for summary judgment.

The Fitness 19 defendants then filed a second motion, this time arguing that, pursuant to Rule 41(a)(1)(A)(i), Malik's notice purporting to dismiss his claims against CallFire requires that the Court dismiss the *entire* action, including the claims against the Fitness 19 defendants.

Because the FAA requires the Court to compel arbitration of any claim governed by an arbitration clause, the Court will first evaluate the F-19 defendants' motion to compel arbitration. 9 U.S.C. § 4. When evaluating such a motion under the FAA, the Court must first determine whether the parties actually agreed to arbitrate. *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005).

The Fitness 19 defendants submit a membership agreement signed by Malik, containing the following arbitration provision:

> If any dispute arises on an interpretation of the rights, duties and obligations under this Contract, the parties each agree to submit the matter to arbitration in the State of Kentucky in accordance with the commercial arbitration rules of Judicial Arbitration and Mediation Services unless parties otherwise agree.

(DE 12-1 Membership Agreement, Additional Terms, ¶ 5.)

As to who is bound by the agreement, the membership agreement identifies the contracting party as only "Fitness 19."  It does not clarify whether "Fitness 19" refers to F-19 Holdings, LLC or Fitness 19 KY 185, LLC or neither of those entities. The Fitness 19 defendants argue that both F-19 Holdings, LLC and Fitness 19 KY 185, LLC are bound by the agreement.

The Sixth Circuit has held that "nonsignatories may be bound to an arbitration agreement under ordinary contract and agency principles." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003). Malik alleges in the complaint that F-19 Holdings, LLC

owns and operates hundreds of fitness centers across the country "doing business as Fitness 19." The membership agreement provides that the term "Fitness 19" includes agents, affiliates, and subsidiaries. (DE 12-1, Membership Agreement, Additional Terms ¶ 1.) Thus, it appears that the agreement is with F-19 Holdings, LLC, doing business as Fitness 19, and that it also binds Fitness 19 KY 185, LLC as a subsidiary.  The Court need not sort this out, however, because Malik does not dispute that both F-19 defendants are parties to and are bound by the agreement to arbitrate.

The next issue is whether Malik's TCPA claim falls within the scope of the arbitration agreement. *Glazer*, 394 F.3d at 451. This question is governed by federal law under the FAA. *Zucker v. After Six, Inc.*, 174 F. App'x 944, 946 (6th Cir. 2006). "As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir.2004) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24  (1983)). Nevertheless, "arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration." *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir.2005) (quoting *United Steelworkers, Local No. 1617 v. Gen. Fireproofing Co.*, 464 F.2d 726, 729 (6th Cir.1972)).

In other words, "while we must bear in mind the presumption of arbitrability, the cornerstone of our inquiry rests upon whether we can resolve the instant case without reference to the agreement containing the arbitration clause." *NCR Corp. v. Korala Assocs.*, 512 F.3d 807, 814 (6th Cir. 2008). "If such a reference is not necessary to the resolution of a particular claim, then compelled arbitration is inappropriate, unless the intent of the parties indicates otherwise." *Id.*

In determining the scope of arbitration clause, the Sixth Circuit has distinguished

4

between "broad" clauses and "narrow" ones. "When faced with a broad arbitration clause, such as one covering *any* dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration." *Simon* 398 F.3d at 775. "Indeed, in such a case, only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators." *Id.* (quotations and citation omitted).

In contrast, a "narrow" arbitration clause is marked by "limiting language – like the word 'only.'" *Util. Workers Union of Am., Local 118 v. Ohio Edison Co.*, No. 97-4332, 1998 WL 869941, at *3 (6th Cir. 1998). Narrow clauses are afforded "a weaker presumption of arbitrability." *Id.*

The arbitration provision here covers "*any* dispute" that "arises on an interpretation of the rights, duties and obligations under this Contract. . . ." (DE 12-1 Membership Agreement, Additional Terms, ¶ 5; emphasis added.) This is a broad arbitration clause. Malik argues that the arbitration provision is narrow because it pertains only to disputes that arise on an *interpretation* of the rights and duties under the agreement. The Sixth Circuit, however, has held that "[t]he presumption of arbitrability is . . . particularly applicable where, as here, the arbitration clause provides for arbitration of *any* controversies regarding *interpretation* of the contract." *Commc'ns Workers of Am. v. Michigan Bell Tel. Co.,* 820 F.2d 189, 193 (6th Cir. 1987) (emphasis added).

Malik does not allege that an express provision of the agreement excludes this dispute from arbitration or that "the most forceful evidence" exists demonstrating that the parties intended to exclude this claim from arbitration. *Simon*, 398 F.3d at 775.

Furthermore, Malik's claim cannot be resolved without referencing the membership agreement. Again, with this action, Malik asserts that the Fitness 19 defendants violated

the TCPA's prohibition against sending text messages via an automated dialing system without the "prior express consent" of the recipient. 47 U.S.C. § 227(b)(1)(A). The Fitness 19 defendants argue that the agreement can be construed to provide such consent because Malik wrote his cell number in the space on the agreement requesting it. In support of that argument they cite a 1992 order by the Federal Communications Commission interpreting the TCPA and addressing the "prior express consent" requirement. The FCC ruled that individuals "who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 7 FCC Rcd 8752, 8769, ¶ 31 (1992). *See also In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7990, ¶ 49 (2015).

In *Murphy v. DCI Biologicals Orlando, LLC,* 797 F.3d 1302 (11th Cir. 2015), the Eleventh Circuit held that, pursuant to the 1992 FCC order, a blood donor who provided his phone number on a donor information sheet had given "his prior express consent to receive auto dialed calls or text messages. . . ." *Id.* at 1308.

Malik argues that the agreement cannot be construed to provide such consent. He cites a 2012 FCC order requiring that express written consent to receive telemarketing robocalls be signed and show that the consumer:

> (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service."

6

*In the Matter of Rules &* Regulations *Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (citations and footnotes omitted).

Malik's argument goes to the merits of this matter and makes clear that his claims against the F-19 defendants cannot be resolved without referring to the agreement. The F-19 defendants argue that the agreement meets the requirements for express consent. Malik argues it falls short of the FCC's requirements. This issue cannot be resolved without reviewing the agreement. Thus, the TCPA claims fall squarely within the scope of the arbitration clause.

Finally, the Court must consider whether Congress intended a TCPA claim to be "nonarbitrable." *Glazer*, 394 F.3d at 451. The TCPA contains no language indicating that claims under it should not be arbitrated and Malik does not argue that TCPA claims are not arbitrable.

Having determined that the TCPA claims against the F-19 defendants should be submitted to arbitration, the Court has discretion to either dismiss or stay this action. The FAA provides that courts should stay proceedings pending completion of arbitration. 9 U.S.C. § 3. The Sixth Circuit, however, has held that dismissal is appropriate where all claims have been referred to arbitration. *Hensel v. Cargill, Inc.*, No. 99-3199, 2008 WL 993775, at *4 (6th Cir. 1999) (citing *Alford v. Dean Witter Reynolds Inc.*, 975 F.2d 1161, 1164 (5th Cir.1992); *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir.1988)).

The only claims that Malik asserts against the F-19 defendants must be arbitrated. Accordingly, the Court will dismiss those claims without prejudice. *See Tweedy v. GE Capital Retail Finance*, No. 1:13-cv-38, 2014 WL 695824, at *7 (S.D. Ohio 2014) ("The procedure generally followed by District Courts in this Circuit is to dismiss the litigation without prejudice.")

As discussed, the F-19 defendants have filed a second motion to dismiss. In this motion, they argue that the claims against them must be dismissed because Malik's notice of dismissal, which he filed pursuant to Rule 41(a)(1)(A)(i) and which purports to dismiss the claims against only CallFire, requires the Court to dismiss not just the claims against CallFire but the entire action.

This motion will be denied. First, the motion is moot, the Court having determined that this Court cannot adjudicate the claims against the F-19 defendants because those claims must be arbitrated. Second, Malik's notice of dismissal does not require dismissal of the entire action. It is true that Rule 41 provides that a plaintiff may dismiss only an *action* – not certain claims – by filing a notice of dismissal before the opposing party serves an answer or a motion for summary judgment. The Sixth Circuit has interpreted the term "action" as used in Rule 41  to mean "the entire controversy," not a certain claim. *Philip Carey Mfg. Co. v. Taylor*, 286 F.2d 782, 785 (6th Cir. 1961).

This simply means that a Rule 41 notice purporting to dismiss only certain claims is ineffective. *See EQT Gathering, LLC v. A Tract of Property Situated in Knott County, Ky.*, No. 12-58-ART, 2012 WL 3644968, at * 1 (E.D. Ky. 2012). It does not mean that such a notice has the effect of dismissing the entire action.

In *Philip Carey*, the Sixth Circuit indicated that Rule 21 is the proper rule for the dismissal of a particular defendant. 286 F.2d at 785. Rule 21 permits this Court, "[o]n motion or on its own" to "at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. Under this rule, "[a] misjoinder of parties . . . frequently is declared because no relief is demanded from one or more of the parties joined as defendants." *Letherer v. Alger Grp., L.L.C.*, 328 F.3d 262, 267 (6th Cir. 2003) (quoting 7 Fed. Prac. & Proc. Civ. § 1683), *overruled on other grounds by Blackburn v. Oaktree Capital Mgmt., LLC*, 511 F.3d 633 (6th

8

Cir. 2008).  Malik filed a notice indicating that he no longer seeks any relief in this action from CallFire. Thus, it is appropriate to dismiss CallFire as a defendant in this action. This does not prejudice the F-19 defendants because the claims against them must be arbitrated in a separate proceeding.

For all these reasons, the Court hereby ORDERS as follows:

1) the motion by the F-19 defendants to dismiss (DE 33) the claims against them is GRANTED and the claims against those defendants are DISMISSED without prejudice;

2) the motion by the F-19 defendants to compel the plaintiff to submit his claims against them to arbitration (DE 33) is GRANTED and, if the plaintiff intends to pursue those claims, he is ORDERED to submit them to arbitration;

3) the F-19 defendants' motion to enforce notice of dismissal as to entire action (DE 42) is DENIED;

4) CallFire, Inc. is DISMISSED as a defendant in this action and all claims against CallFire, Inc. are DISMISSED without prejudice; and

5) CallFire, Inc.'s motion to dismiss (DE 35) is DENIED as moot.

Dated May 19, 2016.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY